UNITED STATES of America,
Plaintiff–Appellee,

v.

Nicolas HERRERA–FIGUEROA,
Defendant–Appellant.

No. 89–50660.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1990.

Decided Nov. 14, 1990.

As Amended Feb. 5, 1991.

Shawn M. Hays, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant Herrera–Figueroa.

Bruce R. Castetter, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING,* Senior District Court Judge.

REINHARDT, Circuit Judge:

Defendant Nicolas Herrera–Figueroa appeals his sentence, contending that the district court misapplied the Sentencing Guidelines by refusing to grant him a two-point reduction in the level of his offense for acceptance of responsibility. His appeal raises the question whether a federal probation officer may refuse to honor a defendant's request that his attorney be present during the presentence interview. Concluding that the exclusion of counsel from presentence interviews serves no rational purpose, we exercise our supervisory power over the orderly administration of justice to hold that when a federal defendant requests that his attorney be permitted to accompany him at a presentence interview, the probation officer must honor that request. Accordingly, we reverse the sentence and remand to the district court for sentencing proceedings consistent with the rule herein announced.

## BACKGROUND

On May 18, 1989, Nicolas Herrera–Figueroa was driving a large sedan along Interstate 8 near the California–Mexico border when he was stopped by the United States Border Patrol. A search of the vehicle Herrera–Figueroa was driving revealed packages containing approximately 200 pounds of marijuana in the trunk.

On May 26, 1989 a federal grand jury sitting in the Southern District of California returned a one-count indictment against Herrera–Figueroa, charging him with possession of a Schedule I Controlled Substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Herrera–Figueroa filed several pre-trial motions, including a motion to suppress the marijuana as the

---

* Hon. Samuel P. King, Senior District Court Judge, United States District Court for the District of Hawaii, sitting by designation.

fruit of an allegedly illegal stop. Following an evidentiary hearing before the Honorable Howard B. Turrentine, Senior United States District Judge for the Southern District of California, the motion was denied.[1] The Honorable Rudi M. Brewster, United States District Court Judge for the Southern District of California, presided over Herrera–Figueroa's trial. The jury found the defendant guilty of the offense charged.

As required by law, a probation officer conducted a presentence investigation and prepared a report to assist the district court in sentencing. *See* United States Sentencing Commission, *Guidelines Manual* ("Sentencing Guidelines" or "Guidelines") § 6A1.1. Although it is the general practice of probation officers to interview defendants as part of the presentence investigation, in this case no presentence interview took place. There is no dispute as to the reason. When the probation officer contacted the defendant to schedule an interview, Herrera–Figueroa, who does not speak English, stated, at the suggestion of the public defender, that he wished to have his counsel present at the interview. However, the probation officer refused to interview him in the presence of counsel and advised him that his attorney would not be permitted to attend.[2] Herrera–Figueroa, again following the public defender's advice, declined to be interviewed without counsel.

Section 3E1.1(a) of the Sentencing Guidelines provides: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Section 3E1.1(b) makes

clear that a defendant may receive the two-point reduction notwithstanding the fact that he did not plead guilty. The probation officer asserted in his report that because there was no presentence interview of the defendant he was unable to ascertain whether Herrera–Figueroa accepted responsibility for his actions. As a result, the report did not recommend that Herrera–Figueroa receive a two-point reduction in the offense level. In lieu of the presentence interview, Herrera–Figueroa submitted a letter to the court in which he described his personal and family background, and how he came to commit his crime. After describing the facts of the case, Herrera–Figueroa admitted: "I am therefore guilty of having driven this car which contained those drugs. Your Honor, I am very sorry for having committed this crime." He went on to observe: "it's my fault and now I will even be deported."

During the sentencing hearing, the court began by noting that, as a consequence of his unwillingness to attend the presentence interview without his attorney present, Herrera–Figueroa was not "given" a two-point reduction for acceptance of responsibility.[3] The court went on to state that since Herrera–Figueroa chose not to be interviewed "at his own risk," the court would "not upset the finding by the probation officer, that no points were taken off the offense level for acceptance of responsibility."

Herrera–Figueroa's attorney then argued that Herrera–Figueroa should receive a two-point reduction for acceptance of responsibility based upon his letter to the court. The government noted that it did not have a "strong objection" to such a reduction. Nevertheless, the district court adhered to its previously stated position

**1.** In addition to appealing his sentence, Herrera–Figueroa also appealed the district court's denial of his suppression motion. In a separate memorandum disposition, filed October 22, 1990, we affirmed that decision. As a result, we do not set forth the facts surrounding the stop or arrest in this opinion.

**2.** There does not appear to be a uniform practice in the Ninth Circuit with respect to whether defendants may be accompanied by counsel at the presentence interview. Although probation departments in some districts within the Ninth Circuit permit defense attorneys to attend the

presentence interview as a matter of uniform office policy, at oral argument defense counsel and the government agreed that in the Southern District of California some probation officers permit defense attorneys to accompany their clients while others do not.

**3.** The court observed: "With respect to the guideline calculations, the Court notes that the Defendant would not give an interview to the Probation Department without his counsel present, and ... therefore, there was no interview of the Defendant, and he was, therefore, not given two points [for] acceptance [of] responsibility."

that it would not disturb the finding by the probation officer, and did not grant the two-point reduction.[4] The district court also rejected defense counsel's argument that Herrera–Figueroa was entitled to an offense level reduction for playing a minimal or minor role in the crime. *See* U.S. S.G. § 3B1.2.

The court then sentenced Herrera–Figueroa to a term of 60 months imprisonment to be followed by three years of supervised release. Herrera–Figueroa timely appealed.

## DISCUSSION

### I. Constitutional Claims

Herrera–Figueroa contends that the district court's acceptance of the probation report punishes him for the exercise of his asserted fifth amendment right not to speak to the probation officer. He also argues that the sixth amendment guarantees to every defendant the right to be represented by counsel at the presentence interview.

■ We find that the defendant's fifth amendment claim is foreclosed by a recent decision of our court. Expressly disavowing any fifth amendment right to a warning—which would have been unnecessary in any event, since even without such a warning he was quite capable of insisting that his attorney accompany him at the presentence interview—the defendant argues that he was penalized for asserting his putative fifth amendment right not to speak to the probation officer. We held in *United States v. Skillman*, 913 F.2d 1477, 1485 (9th Cir.1990), that the denial of a two-point reduction in the offense level for acceptance of responsibility for refusal to speak to a probation officer does not constitute a penalty for the exercise of a fifth amendment right. We therefore must reject the defendant's fifth amendment claim.

We last addressed the question whether the sixth amendment requires that a defendant be allowed to have his attorney present at the presentence interview in *Baumann v. United States*, 692 F.2d 565 (9th Cir.1982). We held there that the presentence interview does not constitute a "critical stage" of the adversary proceeding at which consultation with counsel is guaranteed by the sixth amendment. *Id.* at 577–78 (citing *Estelle v. Smith*, 451 U.S. 454, 470 n. 14, 101 S.Ct. 1866, 1877 n. 14, 68 L.Ed.2d 359 (1981)).

The defendant argues that *Baumann*, which was decided before the adoption of the Sentencing Guidelines, does not apply to sentences under the Guidelines. We noted in *Baumann* that "[a] district judge has wide discretion in determining the appropriate sentence to be imposed." *Id.* at 578. With the reduction in the trial judge's sentencing discretion that has accompanied the adoption of the Guidelines, the defendant contends that the presentence interview now constitutes a "critical stage" of the criminal proceedings for sixth amendment purposes.[5]

■ We need not decide whether *Baumann* applies to presentence interviews conducted in connection with sentences imposed under the Guidelines because we hold, as an exercise of our supervisory power over the orderly administration of justice in the Ninth Circuit, that probation officers must permit defendants to have their attorneys present at the presentence interview.[6]

---

4. The court made no formal finding as to acceptance of responsibility. However, by stating "that the guideline range of 51 to 63 months is correct," the district court implicitly held that Herrera–Figueroa was not entitled to such a finding.

5. *Compare United States v. Jackson*, 886 F.2d 838, 844–45 (7th Cir.1989) (holding, in a case where the defendant's attorney was not informed of the time or place of the presentence interview, that there is no sixth amendment right to counsel at a presentence interview, notwithstanding the adoption of the Sentencing Guidelines) with *United States v. Saenz*, 915 F.2d 1046, 1048–49 (6th Cir.1990) (stating in

dicta that the sixth amendment guarantees a right to counsel at the presentence interview in Guidelines cases).

6. Our colleague's partial concurrence and dissent makes a serious overstatement of the law when it asserts "[w]e have held there is no requirement for counsel to be present at presentence interviews between a defendant and a probation officer." *Post* at 1438 (citing *Baumann*). In fact, *Baumann* decided only that neither the sixth amendment nor the self-incrimination clause of the fifth amendment confers a constitutional right on defendants to have counsel present at the presentence interview.

## II. The Supervisory Power

" '[G]uided by considerations of justice' ... and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (quoting *McNabb v. United States*, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943). We have held that the formulation of such procedural rules is justified as a means "to implement a remedy for a violation of recognized rights." *United States v. Gonsalves*, 781 F.2d 1319, 1320 (9th Cir.1986). The right at stake here is the defendant's right to a fair and even-handed sentencing proceeding. *See United Stated v. Coletta*, 682 F.2d 820, 827 (9th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983) (stating that due process requires fair consideration of sentencing information); *United States v. Doe*, 655 F.2d 920, 927 (9th Cir.1980) (vacating sentence for violation of the defendant's "due process right to a fair sentencing hearing"). The probation officer's refusal to honor Herrera–Figueroa's request to be accompanied by counsel at the presentence interview resulted in an infringement of that right. The refusal was not an isolated occurrence but the product of a patchwork system under which different probation officers follow different policies with respect to such requests. It is appropriate, therefore, to consider whether to exercise our supervisory power in order to prescribe a procedural rule. *Cf. United States v. Zielezinski*, 740 F.2d 727 (9th Cir.1984) (exercising supervisory power to ensure that defendants are treated fairly by the grand jury).

This is a particularly appropriate case for the exercise of our supervisory power, because, " 'when the [probation] officer is preparing a presentence report he is acting as an arm of the court.' " *United States v. Belgard*, 894 F.2d 1092, 1097 (9th Cir.1990) (quoting *United States v. Gonzales*, 765 F.2d 1393, 1398 (9th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986)). Thus, unlike those cases in which we have been asked to use our supervisory power to formulate rules of conduct applicable to officials in the executive branch, here the use of our supervisory power poses no threat to the principle of separation of powers.[7] In prescribing a rule applicable only to the conduct of personnel within the judicial branch, we act in a sphere where the scope of our supervisory power is at its apex.

A rule requiring probation officers to honor a defendant's request that his attorney be permitted to accompany him to the presentence interview will do much to ensure fairness at a minimal cost to the system. Whether or not the presentence interview constitutes a "critical stage" in the criminal proceeding for purposes of the sixth amendment, there is no question that it is an important step in the proceedings in terms of the consequences to the defendant. A defendant's conduct at the presentence interview can have a significant effect on the sentence recommendation in the presentence report, and district courts rely heavily on the contents of those reports.

The presentence interview plays a crucial role in determining the probation officer's recommended sentence. As this case illustrates, a single finding by the probation officer can significantly affect the ultimate sentencing range. Given that Herrera–Figueroa had no criminal history, the probation officer's determination that his offense level was 24 resulted in the court's accept-

692 F.2d at 574–78. *Baumann* does not specifically address the due process right to a fair and even-handed sentencing procedure. *See United States v. Coletta*, 682 F.2d 820, 827 (9th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983) (stating that due process requires fair consideration of sentencing information); *United States v. Doe*, 655 F.2d 920, 927 (9th Cir.1980) (vacating sentence for violation of the defendant's "due process right to a fair sentencing hearing"). More important, we have never before considered whether we

ought to exercise our supervisory power to ensure that defense counsel be permitted to accompany their clients at the presentence interview.

7. *See, e.g., United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.1977), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977) (noting that courts must beware of exercising their supervisory power to prescribe rules of conduct for prosecutors, because such an exercise "could readily prove subversive of the doctrine of separation of powers").

ing a sentencing range of 51–63 months. Had Herrera–Figueroa received a two-point reduction for acceptance of responsibility, the recommended sentencing range would have been 41–51 months. *See* U.S.S.G. Ch. 5, Pt. A (sentencing table).

Yet the decision whether to find that the defendant has accepted responsibility is only one of the many important determinations that the probation officer must make based upon a defendant's conduct at the presentence interview. For example, Application Note 1(e) to section 3C1.1 of the Sentencing Guidelines states that "furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court" can result in a two-point increase in the offense level for obstructing justice. Thus, a defendant who mischaracterizes his criminal record to a probation officer can receive a two-point increase for obstruction of justice. *United States v. Christman*, 894 F.2d 339, 342 (9th Cir.1990). A defendant may receive the two-point increase for misrepresenting his record notwithstanding the fact that the probation officer has access to the defendant's FBI rap sheet and the defendant does not. *United States v. Baker*, 894 F.2d 1083, 1084 (9th Cir.1990). The significant difference in sentencing range that may result from even a two-point increase in offense level strongly supports our conclusion that the presentence interview plays an important role in determining a defendant's recommended sentence.

The presentence interview may pose additional hazards to the uncounseled defendant. For instance, in determining what sentence to impose, the sentencing court may consider allegedly criminal conduct of which the defendant has not been convicted. See U.S.S.G. § 1B1.3, comment. (n.2); U.S.S.G. § 1B1.4; U.S.S.G. § 4A1.3. In conducting the presentence interview, the probation officer is entitled to seek information regarding such conduct, which information, if inculpatory, may provide the basis for a significant increase in his sentence.

■ Although the presentence report is not binding on the district court, *see Belgard*, 894 F.2d at 1097, district *judges* rely

heavily on its contents in determining a defendant's sentence. As we have noted in the past, the purpose of the probation recommendation is "to provide the trial judge with as much information as possible in order to enable the judge to make an informed decision." *Id.* Because the court cannot spend the time necessary to examine every detail of the presentence report, the court must rely on the conclusions of the probation officer: probation officers therefore "are virtually indispensable." *Id.* In this case, for example, despite defense counsel's argument that the defendant's letter to the court indicated acceptance of responsibility, and despite the government's indication that it did not have any strong objections to a finding of acceptance of responsibility, the court stuck with its decision not to "upset the finding by the probation officer."

It can be argued with some legitimacy that the district judge erred in relying as heavily as he apparently did on the presentence report, and that he had an obligation to make his own independent determination on the question of acceptance of responsibility. However, ultimately this argument simply elevates form over substance. From a practical standpoint, district judges must give considerable weight to presentence reports; the system could not function efficiently otherwise. It is clear that the presentence interview currently plays, and will continue to play, a most substantial role in determining a defendant's sentence.

Given the importance of the presentence interview to the defendant, there is no justification for excluding defense counsel. To the legally unsophisticated defendant, the presentence interview—like any interaction with the court—may be an intimidating and confusing procedure. As Justice Sutherland stated for the Supreme Court, almost 60 years ago, in a case holding that due process requires the appointment of counsel in capital cases, "[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law.... He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceedings against him.*" *Powell*

**1436**

*v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) (emphasis added).

Defendants who are not lawyers are not likely to understand the consequences of their conduct at the presentence interview if they are not accompanied by counsel. Such simple advice from the defense attorney as "be totally honest" may make a crucial difference in sentencing range for a defendant who is wary of furnishing information to a probation officer. Similarly, a defense attorney who knows how to obtain and read his client's FBI rap sheet will be able to assist the defendant in making a full disclosure of his criminal record, thereby avoiding a possible finding of obstruction of justice.

Furthermore, as we have noted, in determining what sentence to recommend, the probation officer may base his decision in part upon allegedly criminal conduct of which the defendant has not been convicted. For example, if a defendant was originally charged in a multiple count indictment, and entered a guilty plea to one count in exchange for dismissal of the remaining charges, the probation officer is not precluded from obtaining the defendant's confession to the crimes charged in the dismissed counts, and using that confession as the basis for recommending a longer term of imprisonment than would otherwise be appropriate. *See* U.S.S.G. § 1B1.3, comment. (n.2). Thus, the presentence interview is obviously an occasion on which a defendant could well benefit from consultation with counsel before answering questions that may be put to him. Casual, ill-considered or inaccurate answers offered without a full understanding of the potential consequences may result in a substantial increase in the recommended period of incarceration. Admission of additional criminal conduct is but one of the ways in which an uncounseled defendant's responses—erroneous or not—can ultimately result in an increased sentence. It is evident from the above discussion that there are numerous circumstances in which a defense attorney will be able to protect his client's rights and interests—and thereby help obtain a shorter sentence or avoid a longer one—if he is permitted to be present and represent his client at the presentence interview.

While it is clear that permitting defense attorneys to attend the presentence interview is consistent with the fundamental principles on which our system of justice is based, and while it is equally clear that counsel's participation at this stage of the proceedings will help protect the rights and interests of defendants, we discern no rational purpose that would be served by excluding counsel. Nor has the government offered any justification for doing so, except for the speculation that a lawyer's presence might adversely affect the ability of probation officers to obtain accurate information from defendants.

Although the legal profession may not currently be held in the highest esteem by the public at large, we cannot accept the premise that the net effect of a lawyer's participation in either the guilt or the sentencing stage of criminal proceedings is obfuscation. Indeed, our system of justice is based upon precisely the opposite assumption—that *whenever important interests of a defendant are at stake, the defendant is entitled to be represented by a lawyer.* That the Constitution entitles a defendant to be represented by counsel at every "critical stage" of the criminal proceedings belies any suggestion that permitting lawyers to attend an important—although not necessarily "critical"—portion of the proceedings will disrupt the orderly administration of justice. Thus, we reject the government's arguments.[8]

There is an additional benefit to be obtained from the rule we announce today. In protecting the interests of his client, a

---

**8.** Our holding should not be read to imply that probation officers generally discharge their duty with anything less than complete impartiality. However, the fact that the probation officer is not the defendant's adversary does not diminish the importance to the defendant of the presentence interview. Indeed, a defendant's *constitutional* right to be represented by counsel at sentencing is based upon "the critical nature of sentencing in a criminal case," *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967), notwithstanding the fact that the judge who presides over sentencing is, like the probation officer, presumed to be completely impartial.

defense attorney will generally assist the court. As we have noted, *see supra* p. 1435, it is in the defendant's interest to be completely honest at the presentence interview. Thus, a lawyer who knows this and who, as an officer of the court, has an ethical duty of candor, will counsel his client to be truthful. Just as allowing defendants to be represented by counsel at arraignments, trials, and sentencing hearings serves the interests of justice, so will allowing defendants to be represented by counsel at the presentence interview. We are confident that counsel's presence will further rather than inhibit the objective of obtaining accurate presentence reports and will expedite rather than delay sentencing proceedings.

Finally, we note that our holding serves the very policy goals that led to the adoption of the Sentencing Guidelines. The current practice of the Probation Department in the Southern District of California—whereby each probation officer is free to decide whether or not to allow attorneys to attend presentence interviews—treats defendants unequally on a matter of great importance. By announcing a procedural rule applicable to all probation officers, we serve the policy of evenhandedness in sentencing that underlies the Guidelines.

Indeed, the Sentencing Guidelines themselves contemplate the formulation of rules such as the one we prescribe here. Section 6A1.2 of the Guidelines provides that "[c]ourts should adopt procedures to provide for the timely disclosure of the presentence report; the narrowing, and resolution, where feasible, of issues in dispute in advance of the sentencing hearing; and the identification for the court of issues remaining in dispute." We believe that the rule we adopt serves these objectives. The requirement that defense attorneys be permitted to attend presentence interviews enables counsel to narrow the areas of dispute and identify for the court, at the earliest possible time, the real issues requiring resolution.

## CONCLUSION

■ For the reasons given above, in the exercise of our supervisory power we direct that probation officers be required to permit defendants' counsel to accompany their clients at the presentence interview. In this case it is undisputed that the defendant's counsel was not allowed to do so. The ultimate result of the probation officer's action was a substantially longer sentence—approximately one year more—than the defendant would have received had he been given a two-point reduction for acceptance of responsibility. Because the sentencing judge explicitly declared that he would "not upset the finding by the probation officer," it is apparent that the sentence was based on what even the probation officer acknowledged to be incomplete information. The defendant is entitled to a new presentence interview at which his attorney may be present, to be followed by a new sentencing hearing. The sentence imposed by the district court is vacated.

VACATED AND REMANDED.[9]

LEAVY, Circuit Judge, concurring, in part, and dissenting, in part:

I agree with the majority that this sentence should be vacated and that the case should be remanded. I dissent from the majority's holding that a new rule be established requiring probation officers to allow counsel to be present at a presentence interview.

The record shows the district court failed to determine the issue before it: whether the defendant accepted responsibility for his criminal conduct. Instead, the court deferred to the presentence report, informing the defendant that he failed to participate in a presentence interview at his own risk and that the findings of the probation officer would not be disturbed.

A probation officer's presentence report is not binding on the district court. *United States v. Belgard*, 894 F.2d 1092, 1097 (9th Cir.1990). The sentencing judge is in a unique position to evaluate the defendant's

---

9. We do not address Herrera–Figueroa's contention that he was entitled to an offense level reduction for playing a minimal or minor role in the crime. He is free to renew this claim in the district court on remand.

acceptance of responsibility and is given wide latitude to come to a decision. *United States v. Gonzalez*, 897 F.2d 1018, 1019 (9th Cir.1990). Whether a defendant has accepted responsibility for his crime is a factual determination reviewed for clear error. *Id.* There is no limitation on the type of evidence a federal court may consider regarding the background, character, and conduct of a person convicted of a federal crime. *United States v. Watt*, 910 F.2d 587, 593 (9th Cir.1990).

Because the defendant refused to be interviewed without counsel present, the probation officer had no information with which to make a recommendation on the acceptance of responsibility. The burden is on the defendant to make the necessary showing that he has accepted responsibility. *See Gonzalez*, 897 F.2d at 1021. The record shows the defendant tried to meet this burden by writing a letter to the court. The court should have decided the issue. Even after an interview, with or without the attorney present, the court must decide the issue.

We have observed that courts are not to be improperly influenced by presentence reports and will use their independent judgment to resolve issues before them. *See Belgard*, 894 F.2d at 1099. A district court may not punish a defendant for failing to participate in fact-gathering at a presentence interview if a defendant has by some other means carried the burden of persuading the court of his acceptance of responsibility.

Because the district court failed to determine whether there was an acceptance of responsibility, we must remand to give the court an opportunity to do so.

We have held there is no requirement for counsel to be present at presentence interviews between a defendant and a probation officer. *Baumann v. United States*, 692 F.2d 565, 578 (9th Cir.1982). The Seventh Circuit, citing *Baumann*, has concluded this is so even after the advent of the Sentencing Guidelines. *United States v. Jackson*, 886 F.2d 838, 844 (7th Cir.1989). The majority avoids the holding of *Baumann* not by distinguishing it, but by resorting to an asserted supervisory power, which in this instance serves as a license to ignore precedent.

The majority announces a procedural rule that probation officers be required to permit defendants' counsel at the presentence interview. The court then orders that the defendant be granted a new presentence interview with counsel present. I disagree not only with the majority's holding that the defendant has a right to the presence of an attorney, but also with the mechanics by which it is enforced, in that the majority treats the presentence interview as if it were a forum distinct from the district court. This flies in the face of remedies a court normally provides in circumstances where a person is deprived of an attorney at some location outside the courtroom. Where a defendant has not been given the right to have an attorney present under *Miranda*, no court has ever ordered that the defendant be sent back to the jailhouse to be interviewed with counsel. In line-up cases, where the defendant's right to have an attorney present is not observed, we do not remand for a reenactment of the line-up. Instead, the court excludes the evidence. *See, e.g., Johnson v. New Jersey*, 384 U.S. 719, 723–24, 86 S.Ct. 1772, 1775–76, 16 L.Ed.2d 882 (1965) (Miranda); *Smith v. Endell*, 860 F.2d 1528, 1531 (9th Cir.1988) (Miranda); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (line-up); *Gilbert v. California*, 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178 (1967) (line-up). Moreover, there is not even a civil rights action for damages for failure to give a *Miranda* warning. *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir.1976); *Dunkin v. Lamb*, 500 F.Supp. 184, 187 (D.Nev.1980).

Thus I find inappropriate the court's unprecedented exercise of its claimed supervisory power. The requirements of fairness are met by remanding and requiring the court to consider the evidence before it, as we usually do where a court has failed to decide an issue. No miscarriage of justice is involved by a simple remand with instructions to decide an issue using available evidence.

I fear the majority opinion will lead ultimately to an adversary proceeding at the

presentence interview, where not only defendants' counsel is required but also the prosecutor.